In the Matter of the Estate of Cassie Berg.    Appeal by John Schreiber et al.

*Wills—Probate—Execution—Proof of signature—Evidence.*

When the only question is as to the genuiness of the signature to a will, an issue will not be awarded to determine its validity where three witnesses, familiar with testatrix's handwriting, testify to the genuineness of the signature, and their testimony is corroborated by two experts; and the only evidence to the contrary is the testimony of one witness who testifies as follows: " That looks like Mrs. Berg's but she never wrote that; she never wrote that as sure as the sun shines in heaven, because she never wanted to make such a will. . . . She would not write her name Cassie Berg because it was Katherine Berg."

Argued Jan. 30, 1896. Appeal, No. 266, Oct. T., 1896, by John Schreiber et al., from decree of O. C. Allegheny Co., June T., 1895, No. 329, dismissing an appeal from the register of wills. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Affirmed.

Appeal from register of wills. .

From the record it appeared that Katrina Auth and Henry Berg were married on September 5, 1889. They lived together as man and wife, until Katrina's death, at Verona, Allegheny county, Pennsylvania, on December 2, 1893. There was no issue born of the marriage, and Henry Berg, believing his wife to be intestate, took out letters of administration upon her estate and proceeded to administer thereon. His final account showed personal property in his hands as administrator to the amount of more than $13,000, which property, as shown by said account, he distributed to himself as the husband of the decedent. The account was confirmed absolutely by the orphans' court of Allegheny county, on March 15, 1895. The real estate left by the decedent is estimated to be worth the sum of $50,000.

J. P. Hunter, a member of the bar, testified that on November 11, 1891, Henry Berg and his wife called at his office in reference to some mortgages ; that the conversation turned upon a remarkably short will of a person named Thompson, and that witness said that he could write even a shorter one. He scribbled on a piece of paper the following : " I give all my property to my husband, and appoint him executor of this my will." He handed the paper to Mrs. Berg, and that was the last he saw of it. On June 18, 1895, this paper was discovered signed at the end thereof " Cassie Berg." Three witnesses testified to the genuineness of the signature, and their testimony was corroborated by two experts.

Josephine Auth, a witness for the caveators, testified as to quarrels between Mr. and Mrs. Berg, and when the will was submitted to her testified as follows :

" That looks like Mrs. Berg's, but she never wrote that; she never wrote that as sure as the sun shines in heaven, because she never wanted to make such a will. I think it is written in a very stiff hand, but she never wrote that. She would not write her name Cassie Berg because it was Katherine Berg. That was her other name. She always felt uneasy about that Cassie Berg. She used to write her name with a " C," and she said one little hook might upset everything. She used to feel worried about that name with a " C," but Cassie Berg, as sure as the sun shines in heaven, she never wrote that."

The court refused an issue filing the following opinion:

This appeal is from the decision of the register, admitting to probate as the will of Cassie Berg, deceased, a paper of which the following is a copy:

"I give all my property to my husband, and appoint him executor of this, my will. CASSIE BERG."

The paper is testamentary, and as there is no allegation of testamentary incapacity or undue influence, the only question is as to its execution. That the signature is Mrs. Berg's is clearly and satisfactorily shown by the testimony of three disinterested witnesses familiar with her signature, and by two experts by comparison with other signatures proven to be genuine.

The appellants only examined one witness as to the signature, she said, "That looks like Mrs. Berg's, but she never wrote that; she never wrote that as sure as the sun shines in heaven, because she never wanted to make such a will."

This evidence is not sufficient to justify the submission of the question of the genuineness of the signature to a jury. And as it appears from the testimony of J. P. Hunter, Esq., and Henry Berg that the paper must have been executed subsequently to the passing of the act of June 3, 1887, authorizing a married woman to dispose of her property by will as if she were unmarried, the appeal must be dismissed and issue refused.

*Error assigned* was above decree.

*Charles M. Johnston*, *S. A. Johnston* and *C. S. Fetterman* with him, for appellants.—If upon a trial before a jury, and consideration of such part of the testimony taken in proceedings before the register as would be admissible, the court could support a verdict against the validity of the proffered will, then an issue should be granted in this case: De Haven's App., 75 Pa. 337; Harrison's App., 100 Pa. 458; Schwilke's App., 100 Pa. 628; Knauss' App., 114 Pa. 20; Sharpless' App., 134 Pa. 250.

*Sol. Schoyer*, *Jr.*, and *J. P. Hunter*, for appellee, were not heard.

PER CURIAM, February 17, 1896:

· ' We find nothing in the testimony to form the basis of a substantial dispute as to any material fact relating to the validity of the testamentary paper in this case,—nothing that would justify a trial judge in sustaining a verdict against it as a valid will.    There is not even a reasonable suggestion of testamentary incapacity, or of undue influence.    The only question is as to the proper execution of the instrument by the alleged testatrix.    As to that, the genuineness of her signature thereto is clearly and satisfactorily established by the testimony of three disinterested witnesses familiar with her handwriting; and they are corroborated by the testimony of the experts.    There appears to be nothing in the record that requires further comment.    For these and other reasons, given by the learned judge of the orphans' court, there was no error in refusing the issue and dismissing the appeal from the decision of the register.

. Decree affirmed and appeal dismissed, with costs to be paid by the appellants.